115 F.3d 143
 74 Fair Empl.Prac.Cas. (BNA) 1292, 47 Fed. R.
Evid. Serv. 188
Carlene J. PERRY, Plaintiff-Appellant-Cross-Appellee,
v.
ETHAN ALLEN, INC., Defendant-Appellee-Cross-Appellant.
 Nos. 912, 913, Dockets 96-7545, 96-7639.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 18, 1997.
Decided June 2, 1997.
 
 Jean A. Kiewel, Brattleboro, Vermont (Kiewel & Harris, Brattleboro, Vermont, Bruce Hesselbach, Brattleboro, Vermont, on the brief), for Plaintiff-Appellant-Cross-Appellee.
 Patricia M. Sabalis, Burlington, Vermont (Downs Rachlin & Martin, Burlington, Vermont, on the brief), for Defendant-Appellee-Cross-Appellant.
 Before: NEWMAN, Chief Judge, KEARSE and FRIEDMAN, Circuit Judges*.
 KEARSE, Circuit Judge.
 
 
 1
 Plaintiff Carlene J. Perry appeals from so much of a final judgment entered in the United States District Court for the District of Vermont following a combined jury and bench trial before J. Garvan Murtha, Chief Judge, as dismissed her complaint against defendant Ethan Allen, Inc. ("Ethan Allen" or the "company"), alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1994) ("Title VII"), and the Vermont Fair Employment Practices Act ("FEPA"), Vt.Stat.Ann. tit. 21, § 495 et seq. (1987 & Supp.1996). With respect to the FEPA claim, the jury found that although Perry had been subjected to sexual harassment through exposure to a hostile work environment, she did not prove that Ethan Allen failed to take appropriate corrective action. With respect to the Title VII claim, the district court found that Perry had proven neither that she was subjected to such harassment nor that the company failed to take appropriate corrective action. On appeal, Perry contends principally that the district court erred in excluding relevant evidence, erred in failing to instruct the jury on the theory of respondeat superior, and made clearly erroneous findings of fact. Ethan Allen cross-appeals from a posttrial order denying its motion for attorneys' fees as sanctions. For the reasons that follow, we affirm.
 
 I. BACKGROUND
 
 2
 From August 1987 through December 1990, Perry was employed at Ethan Allen's furniture manufacturing plant in Orleans, Vermont. She was on maternity leave from August until December 1988. In January 1991, Perry resigned, and in May 1991, she filed a charge of discrimination against the company with state authorities, alleging that beginning in June 1989 she had been sexually harassed by her male coworkers.
 
 
 3
 Eventually obtaining a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"), Perry commenced the present action in Vermont state court in December 1993 against Ethan Allen and three of the company's supervisors; the case was later removed to federal court. As amended, the complaint alleged sexual harassment, in violation of Title VII and the Vermont FEPA, breach of a covenant of good faith and fair dealing, and negligent and intentional infliction of emotional distress.
 
 
 4
 On motion by the defendants, the district court dismissed all of Perry's claims except the Title VII and FEPA claims for sexual harassment and the claim for intentional infliction of emotional distress. On motion by Perry, the court also dismissed the claims against the individual defendants, leaving Ethan Allen as the sole defendant.
 
 A. The In Limine Ruling
 
 5
 Prior to trial, Ethan Allen moved to preclude Perry from introducing at trial any evidence concerning, inter alia, harassment of Perry that was not included in her EEOC charge, harassment experienced by Ethan Allen employees other than Perry, and harassment that occurred earlier than the start of the applicable statute-of-limitations periods. In a January 26, 1996 Ruling on Pre-Trial Motions ("In Limine Ruling"), the district court denied the motion to limit Perry's proof to incidents that occurred within the statute-of-limitations periods but granted the motion in most other respects.
 
 
 6
 The applicable limitations period for Perry's claims of sexual harassment, given the date on which Perry filed her EEOC charge, would normally not have permitted recovery for acts that occurred prior to July 1990. The district court, however, noted the possible application of the continuing-violation doctrine, given that Perry alleged in her EEOC charge that she had been harassed since June 1989. See In Limine Ruling at 3-4. The court concluded that in light of "the proximity of the harassment to her return to Ethan Allen after maternity leave" in December 1988, the court could not conclude that Perry's anticipated testimony with respect to events shortly after her return to work would be irrelevant. Id. at 3, 4. The court therefore denied Ethan Allen's motion to limit Perry's proof to the statute-of-limitations period. Instead, the court ruled that Perry would "be permitted to relate incidents of sexual harassment of which she has personal knowledge and which occurred after January 1989." Id. at 3.
 
 
 7
 However, stating that "the Federal Rules of Evidence provide limits on the admissibility of such evidence" and allow the exclusion of "testimony on incidents which are too remote in time or dissimilar" on the ground that they are "irrelevant or more prejudicial than probative," id. at 2, the court largely granted the remainder of Ethan Allen's motion, stating as follows:
 
 
 8
 By contrast, the Court will prohibit all witnesses and testimony regarding alleged incidents of sexual harassment occurring either before January 1989, or after January 1989 which either were not witnessed by the plaintiff or are not related to sexual harassment of the plaintiff while she was on the job. Such evidence is both irrelevant and more prejudicial than probative on this plaintiff's specific claims of sexual harassment.
 
 
 9
 Id. at 4.
 
 
 10
 In sum, Perry was not to be allowed to present any evidence with respect to sexual harassment at Ethan Allen prior to 1989. With respect to the period beginning in January 1989, she was to be allowed to testify to her own sexual harassment experiences, but she was not to present evidence that other female Ethan Allen employees had been harassed unless she herself had witnessed the harassment and it was related to her.
 
 
 11
 B. The Trial and the Decisions on the Merits
 
 
 12
 A nine-day trial was held, with the FEPA sexual harassment claim and the claim of intentional infliction of emotional distress to be decided by the jury, and the Title VII claim to be decided by the court. Perry presented evidence of harassment she had experienced and of harassment of other women employees of Ethan Allen. The company presented evidence from some of those accused of harassing Perry and presented evidence of its general policies regarding sexual harassment and of its responses to Perry's complaint.
 
 
 13
 Perry testified, inter alia, that certain of her coworkers asked her to have sex, pulled at her bra strap, pulled at her pants, pawed her neck, rubbed up against her, and "grab[bed] at [her] chest." She said that whenever she passed in the vicinity of two of her coworkers, they would exchange suggestive catcalls such as, "Woo-hoo, go get her ass." Perry presented evidence from other women employees of the company that confirmed portions of her testimony as to what she had experienced. Perry testified that she complained of these incidents to Ethan Allen's management on December 12, 1990, telling mid-level supervisor Dale McCoy that she was being sexually harassed by Mark Fontaine, Carl Bowen, and Barry Austin; McCoy called Perry's immediate supervisor, Richard Geoffroy, to his office, and Perry described the harassment to them. Perry testified that in September or October 1990, she had also complained to Geoffroy, a low-level supervisor, that a coworker had slipped a coffee-can lid inside her blouse. In April or May of 1990, she had complained to plant superintendent Terry Curtis, telling him that some of her coworkers were accusing her of incompetence or of malingering.
 
 
 14
 Perry testified that coworker Bridget Moulton too had been sexually harassed by Austin, but that Moulton had not reported the incident to Ethan Allen management. Moulton herself testified that Austin had touched her once and that she had told him "to knock it off." Perry was also allowed to testify that she had seen coworker Lisa Willis "get harassed [at the Ethan Allen plant] because she ... went in and complained about sexual harassment on the floor." Perry testified that Willis had been treated "awful[ly]" after lodging her complaint, in that coworkers "refused to talk to her" and that "[t]he supervisor refused to associate with her." Perry was not allowed, however, to have Willis herself testify about her sexual harassment experiences. Indeed, when Willis testified that "[a]fter [Willis] turned Barry [Austin] in for hassling [her], everybody g[a]ve [her] the cold shoulder," the trial judge immediately instructed the jury to "ignore and not take into consideration any comments that Miss Willis stated on examination concerning any sexual harassment complaints by her." Nor was Perry allowed to have coworkers Sandra Dufour and Susan Martell testify about their experiences.
 
 
 15
 Some of the men Perry had accused of harassing her testified at trial. Austin admitted engaging in some of the conduct Perry described, but he characterized his actions as not unwelcome to her; others denied having engaged in the alleged conduct. Ethan Allen presented evidence that Perry's sexual harassment complaint on December 12, 1990, was the first such complaint she made to anyone above the lowest supervisory level. Perry's complaint to plant superintendent Terry Curtis in April or May of 1990, to the effect that some of her coworkers were accusing her of incompetence or of malingering, apparently did not mention harassment of a sexual nature.
 
 
 16
 Ethan Allen presented evidence that since at least 1985, it had an established policy forbidding sexual harassment; that the policy was set out in employee handbooks and posted on bulletin boards at the Orleans plant; and that the policy was the subject of training for supervisors and orientation for new employees. With respect to Perry's December 12, 1990 complaint, Ethan Allen personnel manager Dan Kurzman testified that he was informed of her complaint on that day and that he, McCoy, and Curtis, met with Perry that day. Kurzman told Perry he was going to investigate the complaint and said that if her allegations were found to be correct, the company would take appropriate disciplinary action. Kurzman asked Perry for the names of any witnesses who might be able to assist in the investigation; Perry responded that she had no witnesses. Kurzman instructed Curtis and McCoy to speak to Fontaine, Bowen, and Austin, the three men Perry had accused. Kurzman met with Perry again later that day to discuss the results of his investigation, informing her that the men had denied her accusations. Kurzman asked again whether Perry could think of anyone who might have heard about or seen the incidents of harassment. Perry responded by storming out of Kurzman's office. In a third meeting with Perry that day, Kurzman assured her that he would take "appropriate steps to insure that there would be no unwelcome sexual activity on the floor" and told Perry that if there were any problems whatever, she could come to him directly. Following his meetings with Perry, Kurzman instructed Curtis to review the company's sexual harassment policy with Bowen, Fontaine, and Austin, and directed Geoffroy and McCoy to monitor the workplace to "assure that people were treated professionally, with respect" and that there was "no retaliation of any kind." On the same day, Kurzman also issued written statements to Austin and Fontaine, explaining the repercussions of violating the company's sexual harassment policy. Austin testified that on December 12, 1990, he was warned that those repercussions consisted of "a warning, written warning, then a 3-day suspension, and then termination." Kurzman testified that after December 12, he received no further complaints from Perry.
 
 
 17
 At the close of the evidence, the district court granted judgment in favor of Ethan Allen as a matter of law on the claim of intentional infliction of emotional distress and submitted the FEPA claim to the jury with special interrogatories. The jury returned a verdict in favor of Ethan Allen. According to its responses to the interrogatories, Perry had "proven by a preponderance of the evidence that she suffered sexual harassment through exposure to a hostile work environment," but she had not "proven by a preponderance of the evidence that Ethan [A]llen management level employees failed to implement prompt and appropriate corrective action in response to plaintiff's sexual harassment."
 
 
 18
 Thereafter, as to Perry's Title VII claim, the district judge, in a Memorandum of Decision dated February 28, 1996 ("Merits Decision"), also ruled in favor of Ethan Allen. The court found first that Perry had been able to "credibly relate very few particular instances of harassment by her co-workers" and that the "few instances of harassment which ... Perry recounted were not of a sexual nature." Merits Decision at 2. The court ruled that Perry had "not proven by a preponderance of the evidence that she was subjected to hostile work environment sexual harassment," id. at 3-4, as it concluded that the record was "devoid of credible evidence which suggests plaintiff's coworkers subjected her to unwelcome sexual conduct which was frequent or severe enough to violate Title VII," id. at 4. The court also found that "the credible evidence demonstrate[d] that, when plaintiff complained, Ethan Allen took immediate action and the alleged harassment ceased." Id.:
 
 
 19
 Upon receiving Ms. Perry's complaint, Mr. McCoy immediately summoned her supervisor, Richard Geoffroy. In addition, he passed on Ms. Perry's complaint to Daniel Kurzman, Ethan Allen's Director of Human Resources. Ethan Allen's supervisors confronted the co-workers accused of harassment and warned them that the company would not tolerate harassment. While Ms. Perry felt that the company did not take her complaint seriously, she complained of no further harassment after the meeting.
 
 
 20
 Id. at 2-3. The court concluded that there was no basis for imposing liability on Ethan Allen under Title VII.
 
 
 21
 Following the entry of judgment dismissing the complaint, Perry moved for a new trial, arguing principally that the district court had erred in excluding evidence relating to the sexual harassment of Willis and Dufour and in failing to charge the jury adequately on bases for employer liability. The district court denied the motion, concluding that even if the excluded evidence had been admitted, the jury's verdict would not be either seriously erroneous or against the weight of the evidence. The court also ruled that its instructions as a whole adequately informed the jury of the proper bases for employer liability.
 
 
 22
 Ethan Allen moved pursuant to Fed.R.Civ.P. 11, the court's inherent power, and 28 U.S.C. § 1927 for an award of attorneys' fees as sanctions on the grounds that Perry had pursued meritless claims against innocent defendants and had engaged in abusive discovery and vexatious tactics. In a Ruling on Defendant's Motion for Sanctions dated May 9, 1996 ("Sanctions Ruling"), the court denied the motion, finding "no 'clear evidence' of bad-faith conduct meriting sanctions." Id. at 3.
 
 
 23
 These appeals followed.
 
 II. DISCUSSION
 
 24
 On appeal, Perry principally seeks a new trial on her federal and state claims of sexual harassment, challenging (a) the district court's exclusions of evidence of harassment that occurred prior to 1989 and of harassment not witnessed personally by Perry; (b) the court's failure to instruct the jury that Ethan Allen could be held liable on a theory of respondeat superior; and (c) the court's findings of fact with respect to the Title VII claim. Ethan Allen has cross-appealed from the order denying its motion for an award of attorneys' fees as sanctions. For the reasons that follow, though we view some aspects of the district court's rulings as troublesome, we find no basis for reversal.
 
 A. The Evidentiary Exclusions
 
 25
 In order to prevail on a hostile environment sexual harassment claim under Title VII, a plaintiff must establish two elements. First, she must prove that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (internal quotation marks omitted); see, e.g., Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405-06, 91 L.Ed.2d 49 (1986); Karibian v. Columbia University, 14 F.3d 773, 779 (2d Cir.), cert. denied, 512 U.S. 1213, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994); Carrero v. New York City Housing Authority, 890 F.2d 569, 577 (2d Cir.1989). "The incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Id.; see, e.g., Kotcher v. Rosa & Sullivan Appliance Center, Inc., 957 F.2d 59, 62 (2d Cir.1992); Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1189 (2d Cir.1987). "[O]ne of the critical inquiries in a hostile environment claim must be the environment. Evidence of a general work atmosphere ...--as well as evidence of specific hostility directed toward the plaintiff--is an important factor in evaluating the claim." Hicks v. Gates Rubber Co., 833 F.2d 1406, 1415 (10th Cir.1987) (emphasis in original).
 
 
 26
 Second, the plaintiff must show that a specific basis exists for imputing the conduct that created the hostile environment to the employer. See, e.g., Murray v. New York University College of Dentistry, 57 F.3d 243, 249 (2d Cir.1995); Karibian v. Columbia University, 14 F.3d at 779; Kotcher v. Rosa & Sullivan Appliance Center, Inc., 957 F.2d at 63. When harassment is perpetrated by the plaintiff's coworkers, an employer will be liable if the plaintiff demonstrates that "the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." Karibian v. Columbia University, 14 F.3d at 780 (internal quotation marks omitted); see, e.g., Kotcher v. Rosa & Sullivan Appliance Center, Inc., 957 F.2d at 63.
 
 
 27
 The same showings must be made in order for a plaintiff to prevail on a hostile environment sexual harassment claim under the Vermont FEPA. See, e.g., Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1239 (2d Cir.1995) (FEPA "is patterned on Title VII, and the standards and burdens of proof under state law are identical to those under federal law").
 
 
 28
 The trial court has broad discretion over the admission of evidence, see, e.g., Healey v. Chelsea Resources, Ltd., 947 F.2d 611, 619 (2d Cir.1991), and its evaluation of relevance is entitled to substantial deference, see, e.g., George v. Celotex Corp., 914 F.2d 26, 28 (2d Cir.1990) ("district court's determination of relevance will not be disturbed unless it evidences an abuse of discretion"). Evidentiary rulings ordinarily will not be overturned absent an abuse of discretion, see, e.g., Healey v. Chelsea Resources, Ltd., 947 F.2d at 620; United States v. Torres, 901 F.2d 205, 234 (2d Cir.), cert. denied, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990); In re Martin-Trigona, 760 F.2d 1334, 1344 (2d Cir.1985) (evidentiary rulings generally not to be disturbed unless " 'manifestly erroneous,' " quoting Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962)).
 
 
 29
 Further, even an erroneous evidentiary ruling will not lead to reversal unless affirmance would be "inconsistent with substantial justice," Fed.R.Civ.P. 61; see also Fed.R.Evid. 103(a) ("Error may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected...."); Phoenix Associates III v. Stone, 60 F.3d 95, 104-05 (2d Cir.1995); Healey v. Chelsea Resources, Ltd., 947 F.2d at 620. We will not conclude that a substantial right was affected unless it is likely that in some material respect the factfinder's judgment was "swayed by the error." Phoenix Associates III v. Stone, 60 F.3d at 105 (internal quotation marks omitted); see Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); Hynes v. Coughlin, 79 F.3d 285, 291 (2d Cir.1996).
 
 
 30
 In the present case, Perry complains of the In Limine Ruling's exclusion of (a) evidence of harassment that occurred before January 1989, and (b) evidence of harassment not witnessed personally by Perry. We find the latter ruling more troubling than the former, but neither requires reversal.
 
 
 31
 The court's temporal limitation on the events that Perry could present was not an abuse of discretion. Absent a continuing violation, the statute of limitations ordinarily would have barred any recovery by Perry under Title VII or FEPA for harassment that occurred prior to July 1990; and the earliest harassment alleged by Perry in her EEOC charge occurred in June 1989. The court allowed Perry to present evidence of an environment of sexual harassment, to the extent that she observed it, dating back to January 1989, i.e., six months earlier than any harassment of Perry herself. Given the facts that Perry was on maternity leave from August to December 1988, and that she did not allege that she was the victim of any harassment either from the time of her return from maternity leave until June 1989 or at any time before she took maternity leave, it was well within the court's discretion to conclude that events earlier than January 1989 should be excluded on the ground that they were too remote to have probative value.
 
 
 32
 Moreover, Perry points to only one pre-1989 incident as to which she would have liked to testify, namely that on one occasion someone had placed a condom in plain view on a piece of machinery at which she worked. This additional piece of evidence, though relevant to the nature of the harassment to which she was subjected, was not material to the outcome of her case. On the FEPA claim, since the jury found that Perry had satisfactorily established that she was subjected to sexual harassment, the exclusion of the condom testimony was plainly immaterial. And on both the state and federal claims, the respective factfinders found that Ethan Allen had responded promptly and properly to Perry's complaint; since the latter conclusion alone required dismissal of those claims, the exclusion of the condom incident did not affect her case in any material way.
 
 
 33
 The propriety of the court's exclusion of post-1988 evidence of sexual harassment not witnessed personally by Perry is more questionable. Since one of the critical inquiries with respect to a hostile environment claim is the nature of the environment itself, evidence of the general work atmosphere is relevant. Thus, as the district court itself noted, "[i]n a hostile workplace case, the trier of fact must examine the totality of the circumstances, including evidence of sexual harassment directed at employees other than the plaintiff...." In Limine Ruling at 2 (internal quotation marks omitted). We are puzzled, therefore, by the court's view that if there was sexual harassment of other women Ethan Allen employees but that harassment was not witnessed by Perry, the evidence was "irrelevant." Id. at 4. And since the issue was not whether Perry had notice of the harassment of others but whether there was a pervasive hostile environment, it is unclear why the court would not allow the other women themselves to testify as to the harassment directed at them.
 
 
 34
 In making its exclusionary ruling with respect to the post-1988 period, the district court stated that the evidence of harassment of women other than Perry, insofar as it either was not observed by Perry or was not related to Perry, was "more prejudicial than probative on [Perry's] specific claims of sexual harassment." Id. Rule 403 allows the trial court to exclude relevant evidence on the ground of prejudice to the party against whom it is offered "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. As the terms of the Rule indicate, for relevant evidence to be excluded on this basis, the imbalance must be substantial, and the prejudice must be unfair. "The prejudice that Rule 403 is concerned with involves some adverse effect ... beyond tending to prove the fact or issue that justified its admission into evidence." United States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir.1995) (internal quotation marks omitted); see, e.g., United States v. Figueroa, 618 F.2d 934, 943 (2d Cir.1980) (same); Dollar v. Long Mfg., N.C., Inc., 561 F.2d 613, 618 (5th Cir.1977) (" '[U]nfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party.... The prejudice must be 'unfair.' "), cert. denied, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978). Although any evidence that tends to establish liability is prejudicial to the interests of the defendant, the prejudice is unfair only if the evidence has "an undue tendency to suggest decision on an improper basis." Fed.R.Evid. 403 Advisory Committee Notes (1972).
 
 
 35
 Evidence of the harassment of women other than Perry, if part of a pervasive or continuing pattern of conduct, was surely relevant to show the existence of a hostile environment at Ethan Allen and could have been found probative of the company's notice of that environment within the period that the district court viewed as relevant. The district court did not identify any respect in which the prejudice that might result from such probative evidence would have been unfair.
 
 
 36
 Nonetheless, we conclude that, in all the circumstances, the error in excluding evidence of sexual harassment experienced by Ethan Allen employees other than Perry, to wit, Moulton, Willis, Dufour, and Martell, was harmless. For example, although Perry complains that she was not permitted to offer evidence that "Moulton was subjected to unwelcome sexual comments and touching by co-workers" (Perry brief on appeal at 14), in fact Moulton herself was allowed to testify that Austin touched her once and that she told him "to knock it off." Thus, that incident was in evidence, and the excerpts of Moulton's deposition presented to us do not mention sexual harassment by anyone else. Further, to the extent that the issue was the company's knowledge of harassment, that incident seems of minimal value since Moulton did not report it to Ethan Allen's management. As to harassment directed at Willis, although Willis herself was not allowed to testify about her 1988 complaint to a supervisor regarding harassment by Austin and about the ostracism she suffered as a result of her complaint, Perry was allowed, as described in Part I.B. above, to testify to those events. Thus, that information too was in evidence.
 
 
 37
 As to Dufour and Martell, Perry indicates that they could have testified, respectively, that Dufour had had " 'not completely consensual' " sexual contact with Bowen, and that Martell had been "poked in the breasts by a male employee and had complained to 'a boss' " but that "nothing had been done." (Perry brief on appeal at 15.) However, as we noted above, the jury found that Perry had established that she had been sexually harassed through exposure to a hostile work environment; what was fatal to her case was that she did not establish to the satisfaction of either factfinder that Ethan Allen management failed to implement prompt and appropriate corrective action in response to Perry's own complaint.
 
 
 38
 As to the latter finding, Perry contends that evidence of pre-1989 harassment of the other women would have shown that Ethan Allen had notice of the harassing environment and failed to take action to correct it, and that that evidence would have persuaded the jury that the company's same-day response to Perry's own complaint in December 1990 was not prompt. For example, she states that
 
 
 39
 [a]fter Barry Austin made offensive remarks to Lisa Willis about her breasts, the remarks were reported to Ethan Allen management, namely, Daniel Kurzman.... This is the same Daniel Kurzman upon whom defendant relied for its principal defense of prompt remedial action. Had the evidence been admitted, the so-called "prompt" action would not have appeared prompt at all, but woefully delayed.
 
 
 40
 (Perry brief on appeal at 14.) Even assuming arguendo the validity of the legal premise implicit in Perry's position--i.e., that an employer who had notice of prior incidents of sexual harassment is liable for the sexual harassment of another employee even if it takes corrective action immediately after that employee first complains to management--Perry's factual assertion that Willis would have testified that Willis had complained to Kurzman about Austin and that the company made no remedial response is unsupported by the record. Willis, when questioned at her deposition, did not identify Kurzman as the supervisor to whom she had complained, and she indicated that Austin had thereafter been confronted by the supervisor to whom she did complain. Willis testified as follows:
 
 
 41
 Q. Has anyone ever sexually harassed you at Ethan Allen?
 
 
 42
 ....
 
 
 43
 A. .... Yes.
 
 
 44
 Q. Okay. Did you complain about it at Ethan Allen?
 
 
 45
 A. Yes.
 
 
 46
 Q. To whom did you complain?
 
 
 47
 ....
 
 
 48
 A. .... Dave Thompson.
 
 
 49
 Q. Who was he? Who is he?
 
 
 50
 A. He was the head supervisor over the other supervisors. Like he was the head supervisor over Robin Beaton, Richard Geoffroy and Ray Fairbrother.
 
 
 51
 Q. When did you make a complaint?
 
 
 52
 A. I believe it was sometime in '88.
 
 
 53
 ....
 
 
 54
 Q. What was his response to the complaint, did he say anything to you in the meeting after you made the complaint?
 
 
 55
 A. Dave Thompson?
 
 
 56
 Q. Yes[.]
 
 
 57
 A. He said something like I'm sorry and I'll take care of it.
 
 
 58
 Q. Okay. Do you know if anything was done about it?
 
 
 59
 A. I believe Barry was brought in the office.
 
 
 60
 (Deposition of Lisa Willis at 17, 19-20.) In light of Willis's deposition testimony, we can only conclude that the exclusion of her testimony at trial was entirely harmless insofar as Perry sought to show prior unresponsiveness by the company in general or by Kurzman in particular.
 
 B. The Instruction as to Employer Liability
 
 61
 Perry also contends that the district court erred in failing to instruct the jury on the elements of respondeat superior. Her contention is without merit.
 
 
 62
 The matter of whether the harassing conduct of a supervisor or coworker should be imputed to an employer is determined in accordance with common-law principles of agency. See, e.g., Meritor Savings Bank, FSB v. Vinson, 477 U.S. at 72, 106 S.Ct. at 2408; Murray v. New York University College of Dentistry, 57 F.3d at 249; Karibian v. Columbia University, 14 F.3d at 779. Thus, when a supervisor wields the authority delegated to him by an employer either (a) to condition tangible job benefits affecting an employee on the employee's acceptance or rejection of the supervisor's sexual demands, or (b) to further the creation of a discriminatorily abusive work environment, the supervisor's conduct is deemed to be that of the employer, and the employer is liable for that conduct. See, e.g., Murray v. New York University College of Dentistry, 57 F.3d at 249; Karibian v. Columbia University, 14 F.3d at 780. In contrast, as discussed in Part II.A. above, when the hostile environment is created by a coworker or by a low-level supervisor who does not rely on his supervisory authority in carrying out the harassment, the employer is liable only if it has "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." Murray v. New York University College of Dentistry, 57 F.3d at 249 (internal quotation marks omitted); see, e.g., Karibian v. Columbia University, 14 F.3d at 780.
 
 
 63
 We review a claim of error in the district court's jury instructions de novo, and will reverse on this basis only if the appellant can show that the error was prejudicial in light of the charge as a whole. See, e.g., Anderson v. Branen, 17 F.3d 552, 556 (2d Cir.1994); United States v. Pujana-Mena, 949 F.2d 24, 27 (2d Cir.1991). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." Anderson v. Branen, 17 F.3d at 556. A party is not entitled to have the court give the jury an instruction for which there is no evidentiary predicate at trial. See generally Gadaleta v. Nederlandsch-Amerekaansche Stoomvart, 291 F.2d 212, 214 (2d Cir.1961); 9A C. Wright & A. Miller, Federal Practice and Procedure § 2556, at 448 (2d ed. 1995).
 
 
 64
 In the present case, the district court correctly instructed the jury that Ethan Allen would be liable if "management level employees knew or should have known of the alleged sexual harassment" described by Perry and if "management level employees failed to implement prompt and appropriate corrective action." Perry, however, complains that the court refused to instruct the jury that the company would also be liable if the jury found that a "supervisor use[d] his actual or apparent authority to further the harassment or if he or she was otherwise aided in accomplishing the harassment by the existence of his or her position as a supervisor." While that would have been a correct statement of the law, the district court properly refused to include it in this case because Perry's testimony was that she had been harassed by her coworkers, not by her supervisors. Although Perry testified that she was harassed by Bowen, who was a supervisor, he was not her supervisor and hence could not have relied on his supervisory authority to harass her, at least not without complicity between Bowen and Perry's own supervisor, of which there was no suggestion at trial. And though Perry contends in her brief on appeal that Geoffroy, a low-level foreman, used his supervisory position to harass her, the evidence she presented at trial was not that Geoffroy himself engaged in sexual harassment but rather that in December 1990 he discriminated against her in job assignments and training after she complained of harassment by her coworkers. That assertion could not provide a basis for recovery because it was not included in her EEOC charge. See generally Butts v. City of New York Department of Housing Preservation & Development, 990 F.2d 1397, 1401 (2d Cir.1993) ("A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge."). Plainly, therefore, the testimony with respect to Geoffroy did not warrant the respondeat superior instruction of whose omission Perry complains.
 
 
 65
 C. The District Court's Factual Findings on the Title VII Claim
 
 
 66
 Finally, we see no basis for reversing the district court's decision on the Title VII claim. Although Perry challenges as clearly erroneous the court's findings that there were few instances in which Perry was harassed and that such harassment as there was was not shown to be sexual in nature, those findings, even if clearly erroneous, are irrelevant in light of the court's additional finding that the company took prompt and appropriate steps in response to Perry's complaint to management. The latter finding alone required the dismissal of the Title VII claim.
 
 
 67
 To the extent that Perry challenges the finding that Ethan Allen took prompt and appropriate steps in response to her complaint, we reject her challenge. Assuming that the court was at liberty to make a finding on this fact that was contrary to the finding of the jury that Ethan Allen had taken such steps, but see Wade v. Orange County Sheriff's Office, 844 F.2d 951, 954 (2d Cir.1988) ("[W]hen the jury has decided a factual issue, its determination has the effect of precluding the court from deciding the same fact issue in a different way."); Sorlucco v. New York City Police Department, 971 F.2d 864, 874 (2d Cir.1992) (same); LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 432 (2d Cir.1995) (in order to safeguard parties' Seventh Amendment right to trial by jury, principles of collateral estoppel prevent the judge in a joint trial from making findings of fact contrary to those of the jury), cert. denied, --- U.S. ----, 116 S.Ct. 2546, 135 L.Ed.2d 1067 (1996), the district court's findings are in any event amply supported by the record. Ethan Allen presented evidence at trial that when Perry complained to management that she was being sexually harassed, the company took immediate responsive action by, on that very day, investigating her complaint, confronting the employees she accused, and warning them that the company would not tolerate harassment. The court's finding that Ethan Allen took prompt and appropriate corrective action in response to Perry's complaint cannot be termed clearly erroneous.
 
 
 68
 D. The Cross-Appeal from the Denial of Sanctions
 
 
 69
 Ethan Allen's cross-appeal challenging the district court's denial of its motion for sanctions is without merit and does not require extended discussion. We review all aspects of a district court's award of sanctions under an abuse-of-discretion standard, see, e.g., Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 2460-61, 110 L.Ed.2d 359 (1990) ( Rule 11 sanctions); Chambers v. NASCO, Inc., 501 U.S. 32, 55, 111 S.Ct. 2123, 2138, 115 L.Ed.2d 27 (1991) (inherent power); International Telepassport Corp. v. USFI, Inc., 89 F.3d 82, 86 (2d Cir.1996) (28 U.S.C. § 1927) (per curiam), giving recognition to the premise that "the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard" that informs its determination as to whether sanctions are warranted, Cooter & Gell v. Hartmarx Corp., 496 U.S. at 402, 110 S.Ct. at 2459.
 
 
 70
 Although Ethan Allen points to what it characterizes as Perry's "bad faith submission of papers, tactics, and unreasonable and vexatious multiplication of the proceedings," the district court denied its motion for sanctions, stating, in part, as follows:
 
 
 71
 Although Ethan Allen prevailed at trial, it is clear the plaintiff's complaint was not frivolous in that the jury did find [Perry] had been subjected to harassment. Moreover, the record and testimony at trial demonstrates that, for whatever reason, the plaintiff is a troubled and somewhat confused individual. Given plaintiff's demonstrated inability to clearly relate key events, the Court is unwilling to sanction her attorneys for pursuing, and later withdrawing, claims based upon ultimately unproven allegations against individuals once named as defendants.
 
 
 72
 Sanctions Ruling at 2. The court also found that the "record display[ed] tenacious advocacy by attorneys on both sides," and that there was "no 'clear evidence' of bad-faith conduct meriting sanctions." Id. at 2, 3.
 
 
 73
 The record provides no basis on which we can conclude that this ruling was an abuse of the district court's discretion.
 
 CONCLUSION
 
 74
 We have considered all of the parties' contentions in support of their respective appeals and have found in them no basis for reversal. The judgment of the district court is in all respects affirmed.
 
 
 75
 Each side shall bear its own costs on these appeals.
 
 
 
 *
 Honorable Daniel M. Friedman, of the United States Court of Appeals for the Federal Circuit, sitting by designation