Madeline FINN–VERBURG, Plaintiff,

v.

NEW YORK STATE DEPARTMENT
OF LABOR, Defendant.

No. 98–CV–912.

United States District Court,
N.D. New York.

Nov. 8, 2000.

Peter Henner, Clarksville, NY, for plaintiff.

Hon. Eliot L. Spitzer, Attorney General of the State of New York, Department of Law, The Capitol, Albany, NY (Richard J. Freshour, Asst. Attorney General, of Counsel) for defendant.

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

### I. INTRODUCTION

Plaintiff Madeline Finn–Verburg ("Finn–Verburg") brings this action alleging that the defendant New York State Department of Labor ("DOL") discriminated against her in her employment based upon her gender. Her claims are brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, 42 U.S.C. § 1983, the New York Civil Service Law, the New York Human Rights Law, and state common law.

Defendant moves for summary judgment pursuant to Federal Rules of Civil Procedure 56. Plaintiff opposes defendant's motion. Oral argument was heard on August 25, 2000, in Albany, New York. Decision was reserved.

### II. FACTS

The following facts are taken in the light most favorable to Finn–Verburg, as must be done on a motion for summary judgment. Finn–Verburg has been employed by DOL for eighteen years. Her supervisor during the time period relevant here was Roger Alley ("Alley"). Finn–Verburg contends that sexual harassment by Alley began in 1991.

In 1992 Finn–Verburg requested and received a reduction in her work hours to three days per week. Although her stated reason for the leave was personal and family reasons, she requested the leave to limit contact with Alley. In November 1994, Finn–Verburg attended a sexual harassment training class given by DOL, which included directions for filing complaints of discrimination.

In June 1997 Finn–Verburg filed a complaint alleging sexual harassment with

DOL's Division of Equal Opportunity Development ("DEOD"). She alleged that Alley glared at her in a hostile manner, subjected her to continual verbal abuse, made false accusations against her, attacked her character, followed her in a physically aggressive manner, used profane and obscene language on at least one occasion, stalked her outside of the workplace, and attempted to obtain personal information about her from other employees.

Karen Martin ("Martin"), an Affirmative Action Administrator II in DEOD, investigated Finn–Verburg's allegations of sexual harassment. Martin determined that Alley exhibited poor supervisory skills, but that he had not created a hostile work environment. Martin recommended that a counseling memorandum be placed in Alley's personnel records, additional managerial/supervisory training be provided, and quarterly interviews of Alley's staff be conducted to assure that Alley did not retaliate against his employees for their statements against him made during the course of the investigation. There is no evidence indicating that any of these recommendations were carried out.

At least four other women have complained about sexual harassment on the part of Alley. These women also made claims that Alley retaliated against them for making such complaints.

Beth Schmidt ("Schmidt") made a complaint about the same type of behavior about which Finn–Verburg complains. Additionally, Schmidt alleged that Alley made inappropriate comments to her, and showed her photographs of transvestites that she did not want to see. When Schmidt complained about Alley to his supervisor, Christopher Forkeutis, he laughed. An investigation by DEOD yielded similar recommendations as did the Finn–Verburg investigation: Alley needed to attend sexual harassment training and sensitivity training. Schmidt asserts that Alley retaliated against her for making the DEOD complaint, by giving her a performance complaint. Schmidt ultimately transferred out of Alley's section.

Debra Atwell ("Atwell"), a DOL employee since 1969, also complained of Alley's conduct. Atwell further alleged that Alley retaliated against her because of the part that she played in the DEOD investigation of Schmidt's complaint. Atwell transferred to the Poughkeepsie office in order to get away from Alley.

Virginia Ford was employed by DOL since 1983. In 1994 Alley became Ford's direct supervisor. Ford alleged that Alley created a hostile work environment. She avers that Alley stated that women should stay at home and not work. Ford did not file a formal complaint, but did complain to her indirect supervisor, Christopher Forkeutis, about Alley. In 1995 Ford requested a transfer away from Alley. She was transferred in 1996.

Lucinda Kentris ("Kentris") was Alley's secretary from December 1996 to October 1997. On June 18, 1997, she filed a complaint with the DEOD regarding the alleged hostile environment created by Alley. Kentris alleged conduct by Alley substantially the same as that alleged by Finn–Verburg. On July 10, 1997, Alley wrote a performance report dismissing Kentris. However, the personnel office rejected Alley's report and Kentris was permitted to retain her employment with a second probationary period. Martin investigated Kentris's complaint and determined that Alley's alleged conduct did not constitute discrimination. On October 29, 1997 Kentris resigned from DOL, citing Alley's conduct as the reason.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56;

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Richardson v. New York State Dep't of Correctional Servs.,* 180 F.3d 426, 436 (2d Cir.1999). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Richardson,* 180 F.3d at 436; *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. 2505; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. At that point the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348.

Defendant relies upon several bases for summary judgment, which will be addressed seriatim.

## B. *Hostile Work Environment*

■ Under Title VII, in order to establish a *prima facie* case of hostile work environment discrimination, a plaintiff must sufficiently plead and prove: (1) that she is a member of a protected group; (2) that she was the subject of unwelcome advances; (3) that the harassment was based upon her sex; and (4) that the harassment affected a term, condition or privilege of her employment. *See Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1042

(2d Cir.1993). A hostile work environment is one which is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)(internal quotations omitted) (citations omitted); *Torres v. Pisano,* 116 F.3d 625, 630 (2d. Cir.1997). The conduct must be severe or pervasive enough that an objective, reasonable person would find the work environment hostile or abusive. *Harris,* 510 U.S. at 21, 114 S.Ct. 367. Additionally, the victim must subjectively perceive the environment as abusive. *Id.* at 21–22, 114 S.Ct. 367.

One of the critical issues in a hostile environment claim is the nature of the work environment itself. *See Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1415 (10th Cir.1987); *accord Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997). Several courts have held that evidence of discriminatory conduct directed at other employees is relevant in establishing a generally hostile environment and intent to create such an environment. *See Hicks,* 833 F.2d at 1415–16; *Perry,* 115 F.3d at 149; *Leibovitz v. New York City Transit Auth.,* 4 F.Supp.2d 144, 151 (E.D.N.Y.1998)(citing *Hicks* for the proposition that evidence that other employees had been harassed should be considered in determining whether plaintiff established a claim for hostile work environment); *EEOC v. A. Sam & Sons Produce Co.,* 872 F.Supp. 29, 36 (W.D.N.Y.1994)(holding that discriminatory conduct directed at co-workers can be used as evidence of hostile environment).

■ Defendant first contends that plaintiff cannot show that Alley discriminated against her because of sex, because Alley treated all employees in the same manner. Defendant argues that Alley was a poor supervisor of both males and females, and that Alley had no particular anti-female bias. Defendant points to several facts

that it contends are undisputed in support of its position.

There is no dispute that Finn–Verburg never observed Alley being violent or aggressive toward any female employee other than herself. However, Finn–Verburg has adduced competent evidence from Finn–Verburg herself and other female employees of such conduct by Alley against them. Such conduct includes yelling, slamming fists, aggressiveness, and flying into a rage.

There is also no dispute that Alley did not request sexual favors from Finn–Verburg or other female employees. This is not fatal to Finn–Verburg's claim, however, as it is well established that creation of a hostile work environment provides a basis for Title VII liability in addition to quid pro quo harassment.

Defendant contends that Alley never referred to Finn–Verburg in a derogatory manner; however, Finn–Verburg disputes this fact. Finn–Verburg relates one occasion when Alley subjected her to a torrent of profane and obscene language and alleges that Alley continually subjected her to anger, verbal abuse, and false accusations.

Defendant contends that Alley never spoke to Finn–Verburg or other female employees in a sexually offensive manner. The parties do not dispute that Alley did not make sexually offensive gestures toward females. However, Finn–Verburg herself states that she was subjected to sexually offensive language. Additionally, Schmidt and Kentris, both female, testified by affidavit that Alley subjected them to sexually offensive language.

Finn–Verburg has also adduced some evidence that men and women were treated differently. Further, there is no evidence that Alley treated men in the same manner that has been related here about his treatment of women.

Defendant has failed to demonstrate that no genuine issue of fact remains for trial. Rather, a genuine issue of material fact regarding whether the hostile work environment[1] at DOL was based upon Finn–Verburg's gender.

## C. *Faragher Defense*

■■■ An employer may shield itself from liability for discrimination by a supervisor when no tangible job action was taken against the employee who was the subject of the discrimination. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 2292–93, 141 L.Ed.2d 662 (1998). The employer must show that it (a) "exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*, 118 S.Ct. at 2293. Proof that the employer had an anti-harassment policy and a complaint procedure may provide evidence of the employer's use of reasonable care. *Id.*, 118 S.Ct. at 2293. Failure of the employee to use reasonable care to avoid harm ordinarily is proven by establishing that the employee unreasonably failed to use the complaint procedure. *Id.* at 807–08, 118 S.Ct. at 2293. The burden of proving both elements of the defense by a preponderance of the evidence is on the defendant employer. *Id.* at 807, 118 S.Ct. at 2293.

Defendant argues that it is entitled to protection from liability because Finn–Verburg failed to avail herself of the complaint procedure available to her at an earlier time. Defendant contends that if,

---

1. There is no genuine issue as to whether a hostile work environment existed. For example, defendant asserts as undisputed fact that Alley's management style is "very aggressive and intrusive," and that Alley "has a problem with everybody." (Def.'s L.R. 7.1 Statement ¶ 23, 28.) Rather, what is in dispute is whether the hostile work environment affected both males and females equally, or whether it was based upon one's gender. *See id.* ¶ 22, 24, 27.

as the plaintiff contends, Alley began sexual harassment of her in 1991, it was unreasonable for her to wait until 1997 to complain. According to defendant, Finn–Verburg's failure to complain earlier was unreasonable, and this is demonstrated by her attendance in 1994 at a sexual harassment training class put on by DOL. Moreover, defendant contends that there is no genuine issue of material fact as to its exercise of reasonable care, therefore establishing the first element of the defense.

Since the defense would not come into play unless a finding of harassment was made, for the purposes of this discussion it will be assumed that Alley's conduct constituted sexual discrimination.

█ As to the first element of the defense, while DOL had a policy and procedure for complaints in place, a question of fact remains for jury determination as to whether DOL exercised reasonable care in promptly correcting the harassment. DOL unquestionably investigated plaintiff's complaint. Martin conducted the investigation and made recommendations. However, no evidence is in the record indicating that any of the recommendations were carried out. In addition, there is evidence in the record that prior and concurrent complaints of sexual harassment were made by other employees and no corrective action was taken by DOL beyond investigating and making recommendations. Whether DOL's investigation and follow-up constituted reasonable care remains a question of fact.

As for the second element, Finn–Verburg has adduced evidence that other female employees had made complaints against Alley, to no avail. She has also adduced evidence that other female employees who had made complaints against Alley were retaliated against by him for having done so. Having been aware of the prior complaints, the lack of corrective action by DOL, and the retaliation by Alley, she contends that she felt it would be futile to file a complaint at that time. Accordingly, a question of fact remains as to whether the delay in Finn–Verburg's making a complaint constituted an unreasonable failure to take advantage of the corrective opportunity presented by DOL.

### D. *Retaliation*

█ A plaintiff may establish a prima facie case of retaliation under Title VII by showing "(1) participation in a protected activity that is known to the defendant, (2) an employment decision or action disadvantaging the plaintiff, and (3) a causal connection between the protected activity and the adverse decision." *Richardson,* 180 F.3d at 443. Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to set forth evidence of a legitimate, non-retaliatory explanation for the employment action. *Id.* If the defendant is successful in meeting its burden, then the "plaintiff must demonstrate that there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation." *Id.*

█ In filing a complaint with the DEOD in June 1997, the plaintiff clearly participated in a protected activity.[2] However, the plaintiff has failed to show that as a result of this filing, there was any employment decision which disadvantaged her. The only tangible employment act which she contends that she suffered was a "constructive discharge" when she took a

---

**2.** Plaintiff alleges that the "protected activity" was participating in an investigation of a complaint made by a coworker (Schmidt). She gave a statement in 1995. However, plaintiff has not set forth any facts to demonstrate that Alley's behavior changed in any manner because of that participation. According to plaintiff, it was equally hostile at all times. Neither does she set forth evidence of any adverse decision by the DOL as a result of that statement. The failure of the DOL to take action against Alley in response to the Schmidt complaint may be evidence against the defendant for allowing a hostile work environment to continue or to justify plaintiff's delay in filing her own complaint. However, without more, it is not evidence of retaliation against Finn–Verburg.

reduction in hours in order to limit her contact with Alley.[3] First, this occurred in 1992, five years before she filed her complaint. Second, this was not a decision of the defendant, but the plaintiff's own decision. Therefore, there can be no causal connection between the protected activity and any adverse decision of the defendant. The plaintiff has failed to establish a prima facie case of retaliation. Therefore, this claim must be dismissed.

### E. State Human Rights Law Claims—Eleventh Amendment Bar

Defendant contends that plaintiff's New York Human Rights Law claims are barred by the Eleventh Amendment. Plaintiff makes no contrary argument.

■ All claims against New York State brought under 42 U.S.C. § 1983, the New York Civil Service Law, the New York Human Rights Law, and New York common law (such as intentional infliction of emotional distress) are barred by sovereign immunity. *Lambert v. New York State Office of Mental Health,* No. 97–CV–1347, 2000 WL 863461, at *7 (E.D.N.Y. June 9, 2000).

### IV. CONCLUSION

A genuine issue of fact exists as to whether the hostile work environment at DOL was based upon Finn–Verburg's gender. Genuine issues of material fact also exist as to both elements of defendant's affirmative defense under *Faragher.* Otherwise, the remaining claims must be dismissed.

Accordingly it is

ORDERED that

1. Defendant's motion is GRANTED in part, and DENIED in part;

2. All claims pursuant to 42 U.S.C. § 1983, New York Civil Service Law, New York Human Rights Law, and New York common law are DISMISSED;

3. The retaliation claim pursuant to Title VII, 42 U.S.C. § 2000e, is DISMISSED; and

4. The motion to dismiss the claims of hostile work environment and sexual harassment pursuant to Title VII, 42 U.S.C. § 2000e, is DENIED.

IT IS SO ORDERED.

---

**3.** The vague allegations of a promotional opportunity in June 2000 fall far short of creating an issue of fact. They neither establish an adverse employment decision, nor a causal connection between it and plaintiff's statement in the Schmidt matter in 1995, or her complaint in 1997.