Elsa M. DELRIO, et al Plaintiffs,

v.

THE UNIVERSITY OF CONNECTI-
CUT HEALTH CARE and Les-
lie S. Cutler Defendants.

No. 3:98CV01933(GLG).

United States District Court,
D. Connecticut.

Dec. 1, 2003.

See also, 292 F.Supp.2d 398, 2003 WL
22908144, 292 F.Supp.2d 385, 2003 WL
22908491, 292 F.Supp.2d 425, 2003 WL
22911224.

John Rose, Jr., Levy & Droney, P.C., Farmington, CT, for Plaintiffs.

Carla R. Walworth, Mary C. Dollarhide, Peter M. Schultz, Sarah Elizabeth Graves, Paul, Hastings, Janofsky & Walker, Stamford, CT, William N. Kleinman, Attorney General's Office, Farmington, CT, for Defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GOETTEL, District Judge.

Pending before the court is defendants' motion for summary judgment on all claims asserted by plaintiff Elsa Delrio in her first amended complaint. For the reasons stated below, the court *grants* defendants' motion for summary judgment (Doc. # 105) on all seven counts.

### I. Procedural History and Facts

On February 23, 1999, plaintiff Elsa M. Delrio[1] ["Delrio"], and three co-workers filed an amended seven-count complaint against the University of Connecticut Health Center ["Health Center"] and Leslie S. Cutler ["Dr. Cutler"]. In the first count, plaintiff alleges that the Health Center engaged in hiring and employment discrimination based on race, color and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and state law,[2] without specifying which law. In the second count, plaintiff alleges that the Health Center denied her equal rights under the law in violation of 42 U.S.C. § 1981. The third count asserts a claim against Dr. Cutler— violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983. In the fourth count, plaintiff alleges that Dr. Cutler's discriminatory actions violated plaintiff's due process rights. In the fifth count, plaintiff asserts a breach of implied contract claim against the Health Center. In the sixth count, plaintiff asserts a claim of intentional infliction of emotional distress against the Health Center. In the seventh count, plaintiff alleges that the Health Center created a hostile work environment. Plaintiff seeks both compensatory and punitive damages. (Pl.'s Am. Compl.).

■ As an initial matter, defendants, in their reply brief, contend that plaintiff has failed to comply with the District of Connecticut's local rules regarding motions for summary judgment. A party opposing a motion for summary judgment shall submit a document entitled "Local Rule 56(a)2 Statement," which must include "a list of each issue of material fact as to which it is contended there is a genuine issue to be tried." D. Conn. L. Civ. Rule 56(a)2. "Each statement of material fact in a Local Rule 56(a) Statement by a movant or oppo-

---

1. The other plaintiffs are Yvonne Ozenne, Goffrey Oliver, and Myriam Sanchez. The court will address defendants' motions for summary judgment against each plaintiff's claims in separate rulings.

2. Defendants assume this to be Conn. Gen. Stat. § 46a–70, the Connecticut Fair Employment Practices Act ["CFEPA"]. Plaintiff did not raise any objection to this assumption in her opposition briefs.

nent must be followed by a citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." D. Conn. L. Civ. Rule 56(a)3. Defendants complain that plaintiff's submission of twenty-five material facts does not contain any citation to either an affidavit of a witness competent to testify as to the facts at trial or other admissible evidence pursuant to the local rules. (Defs.' Reply Br. at 4). Thus, defendants conclude that all the material facts set forth in their Local Rule 56(a)1 Statement should be deemed admitted and that the court should grant summary judgment in their favor. (*Id.*).

In reviewing the parties' submissions, the court agrees that plaintiff's Local Rule 56(a)2 Statement does not comply with the local rules. *See* Doc. # 119. On October 20, 2003, plaintiff also filed a "Local Rule 9(c)2 Statement" which indicates which of each of the thirteen facts asserted by defendants is admitted or denied. *See* Doc. # 130.

In accordance with the Local Rule, this court has repeatedly held that the opposing party's failure to submit a timely Local Rule 56(a)2 Statement will result in the court's deeming admitted all facts set forth in the moving party's Local Rule 56(a)1 Statement. *See*, e.g., *Booze v. Shawmut Bank,* 62 F.Supp.2d 593, 595 (D.Conn. 1999); *Trzaskos v. St. Jacques,* 39 F.Supp.2d 177, 178 (D.Conn.1999). Likewise, the court will deem admitted for purposes of this motion all facts set forth in defendants' Local Rule 56(a)1 Statement. Nevertheless, because the court is considering these facts in ruling on a motion for summary judgment, they will be viewed in the light most favorable to plaintiff with all reasonable inferences drawn in favor of plaintiff, as the non-moving party.

A brief summary of the factual background is in order. Defendant Health Center is an educational, research, clinical and health care facility comprised of nine distinct divisions. (Defs.' Statement at ¶ 1). Defendant Dr. Cutler was the Chancellor and Provost for Health Affairs at the Health Center from February 1992 through June 2000; he currently is a part-time Business Development Officer at the University of Connecticut's Center for Science and Technology Commercialization. (*Id.* at ¶ 2). Plaintiff Delrio, a Hispanic female and current employee, commenced her employment with the Health Center in June 1986 and has been continuously employed by the Health Center since that date. (*Id.* at ¶ 3). At all relevant times, plaintiff has held the position of "Clerk." (*Id.* at ¶ 4).

Plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ["CHRO"] dated November 12, 1997, alleging retaliation on or about October 21, 1997, and that she was "less trained on or about July 24 & 31, 1997 and September 23 & 30, 1997." (*Id.* at ¶¶ 5,7 & 9). Plaintiff later submitted a three-page letter to the CHRO dated April 12, 1998, wherein she states, "I have been denied promotion and advancement." (*Id.* at ¶ 6). While working at the Health Center, plaintiff heard the following: two comments by a co-worker in 1986 that plaintiff "smelled like" and "dressed like" a Puerto Rican; two 1986 comments made by a doctor in plaintiff's presence, not directed at her, to the effect that "fucking Puerto Ricans come to this country and can't speak English;" a one-time comment by a co-worker in 1997, who stated that she was glad that plaintiff and a Health Center doctor had resolved a problem because "for a moment I wasn't sure if the Puerto Rican [Delrio] or the Irish [doctor] were ahead;" and statements made in plaintiff's presence between 1988 through 1995 referring to a Health Center patient as "this low life, piece of shit, scum sucking dog, welfare recipient." (*Id.* at ¶ 10).

From the commencement of her employment at the Health Center in 1986 through 1995, plaintiff had two supervisors—Margaret Hennessey and Patricia Aglio. (*Id.* at ¶ 11). All of the comments above are alleged to have occurred during the 1986–1995 time period, except the 1997 statement by a co-worker that "for a moment I wasn't sure if the Puerto Rican [Delrio] or the Irish [doctor] were ahead." (*Id.*). At her deposition, plaintiff stated that she never complained to Hennessey regarding alleged workplace harassment. (*Id.* at ¶ 12). Plaintiff also testified that she complained to Aglio regarding "departmental problems and issues, patient related and unrelated," but not about incidents of harassment, although plaintiff understood that she could do so. (*Id.*).

During her deposition, plaintiff stated that Dr. Cutler was never her supervisor and that he did not have any responsibility for deciding what jobs or positions plaintiff would have or not have. Plaintiff stated that she does not claim that Dr. Cutler personally discriminated against her or harassed her. (*Id.* at ¶ 13).

## II. Standard of Review

The standard for summary judgement is well established. The moving party is entitled to summary judgment if it demonstrates that there is no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). "[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. Discussion

### A. Eleventh Amendment

■ In their memorandum of law in support of their motion for summary judgment, defendants contend that plaintiff's CFEPA claim in Count One, the § 1981 claim in Count Two, the breach of implied contract in Count Five and the claim of intentional infliction of emotional distress in Count Six, all against the Health Center, are barred by the Eleventh Amendment. (Defs.' Mem. at 6).

Surprisingly, plaintiff does not address this argument in her memorandum in opposition to defendants' motion. The court notes that in both the first amended complaint and in plaintiff's aforementioned memorandum, the Health Center is described as an agency of the state. (Pl.'s Am. Compl. at 8 and Pl.'s Mem. at 9).

■ The Eleventh Amendment bars suits for money damages against a state or its agencies unless the state has unequivocally consented to be sued. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67

(1984). The courts have consistently held that Connecticut state universities and their boards of trustees are entitled to claim immunity under the Eleventh Amendment. *Brown v. W. Conn. State Univ.*, 204 F.Supp.2d 355, 361 (D.Conn. 2002). This immunity also extends to state officials sued in their official capacities. *See Gaynor v. Martin*, 77 F.Supp.2d 272, 281 (D.Conn.1999).

 A state may be subject to suit in federal court one of two ways: (1) Congress can divest a state of immunity through a statutory enactment, as it has done with Title VII; or (2) a state may waive its immunity and agree to be sued in federal court. *Close v. New York*, 125 F.3d 31, 39 (2d Cir.1997). However, a state may consent to suit in its own courts without consenting to suit in federal court. *Smith v. Reeves*, 178 U.S. 436, 441–45, 20 S.Ct. 919, 44 L.Ed. 1140 (1900).

Under Connecticut law, Conn. Gen.Stat. § 46a–100 [3], Connecticut waived its immunity for suit in state court for CFEPA claims. But it has not clearly expressed a waiver to suit in federal court. Therefore, the courts of this district have consistently found that CFEPA claims against the state or its agents are barred by the Eleventh Amendment. *See Lyon v. Jones*, 168 F.Supp.2d 1, 6 (D.Conn.2001). Count One contains a CFEPA claim against the Health Center, an agent of the State of Connecticut, which is protected by immunity under the Eleventh Amendment. Accordingly, summary judgment in favor of the defendants is granted as to the CFEPA claim in Count One.

### B. Connecticut Common–Law Claims

 The state also has immunity under the Eleventh Amendment for state common-law claims. *See Pennhurst*, 465 U.S. at 106, 104 S.Ct. 900, ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law"), and *Cates v. Conn. Dep't of Corr.*, No. 3:98CV2232(SRU), 2000 WL 502622, at \*12 (D.Conn.Apr.13, 2000). Applying the same reasoning used in analyzing the CFEPA claim, the Health Center is an agent of the state, protected by the Eleventh Amendment. Therefore, the court grants summary judgment in favor of the defendants on Count Five for breach of implied contract and Count Six for intentional infliction of emotional distress.

### C. Title VII

Defendants also maintain that the Title VII claims in Count One and Count Seven fail as a matter of law because plaintiff did not establish that she was discriminated against on the basis of her race or national origin, subjected to a hostile work environment or retaliated against for engaging in activity protected under Title VII. (Defs.' Mem. at 12).

#### 1. Failure to Promote

 First, defendants argue that plaintiff's claim that she was denied promotions is time barred because of her failure to exhaust her administrative remedies. (Defs.' Mem. at 7). Defendants contend that plaintiff's CHRO complaint filed on November 12, 1997, does not contain any

---

**3.** Conn. Gen.Stat. § 46a–100 provides:

Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a–82 and who has obtained a release from

the commission ... [for] any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford. . . .

allegation of failure to promote or denial of job opportunities. (*Id.* at 8).

Plaintiff counters that under the "continuing violations" doctrine, her claims are still operative. (Pl.'s Mem. at 21–24). Plaintiff concedes that her November 12, 1997, CHRO complaint was filed "inartfully," but that she amended it on April 12, 1998. (*Id.* at 31). Plaintiff maintains that the three-page letter sets forth plaintiff's denial of a promotion to Medical Technician during the Health Center's reorganization of the Emergency Room in 1995 and her lateral transfer to the Ear, Nose and Throat ["ENT"] Clinic in 1996. (*Id.* at 31).

Plaintiff would have had to file a charge with the CHRO within 300 days in order to maintain her claim that she was denied a promotion in either 1995 or 1996. *See* 42 U.S.C. § 2000e–5(e). "This requirement functions as a statute of limitations ... in that discriminatory incidents not timely charged ... will be time-barred upon the plaintiff's suit in district court." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir.1998) (citations omitted). Here, plaintiff filed her charge with the CHRO on November 12, 1997. Therefore, the limitations period for the purposes of her Title VII claims begins on January 17, 1997.

In *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Supreme Court held that the continuing violations doctrine does not preserve time-barred discrete discriminatory acts. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113, 122 S.Ct. 2061. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at

114, 122 S.Ct. 2061. However, an employee may use prior acts "as background evidence in support of a timely claim." *Id.* at 113, 122 S.Ct. 2061.

In addition, it is well settled law in the Second Circuit that "discrete acts" include discriminatory transfers, job assignments and non promotions, and failure to compensate adequately. *See Gross v. Nat'l Broadcasting Co., Inc.*, 232 F.Supp.2d 58, 68 (S.D.N.Y.2002)("[A]lleged failures to compensate adequately, transfers, job assignments and [non-]promotions cannot form the basis for a continuing violation claim"); *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997)("[A] job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing' nature." (internal quotation marks and citation omitted)); *Crosland v. City of New York*, 140 F.Supp.2d 300, 308 (S.D.N.Y. 2001)("It is well-established that transfers, demotions, failure to compensate adequately, and failure to promote are all discrete acts which do not constitute a continuing violation.").

It is clear that plaintiff's denial of a promotion to Medical Technician during the Health Center's reorganization of the Emergency Room in 1995 and her lateral transfer to the ENT Clinic in 1996 constitute separate and discrete acts. Thus, plaintiff's claims are untimely and no longer actionable.

The next issue is whether her failure to promote claims based on conduct that occurred after January 17, 1997, are actionable. At her deposition, plaintiff testified that she applied for the position of office assistant two times in 1998 and 1999, the position of administrative assistant three or four times between 1996 and 1999, and the position of administrative coordinator once in 1998. (Pl.'s Dep. at 181–184). Plaintiff also testified that she does not recall if the positions were filled or

anything about the persons who filled them. (*Id.* at 185). However, plaintiff does recall that Human Resources personnel explained to her that she did not qualify for any of these positions because she did not have a college education. (*Id.* at 188–189). Plaintiff also stated that she does not have "a concrete fact of that I was not given the positions because I am a Hispanic or Puerto Rican woman." (*Id.* at 192). Therefore, this court concludes that plaintiff's claims fail as a matter of law. Accordingly, the court grants defendants' motion for summary judgment as to plaintiff's failure to promote claim in Count One.

### 2. Retaliation Claim

Next, defendants contend that plaintiff's claim of retaliation fails as a matter of law because plaintiff failed to allege "retaliation" in any of the seven counts in her first amended complaint. (Defs.' Mem. at 15).

Title VII provides in part that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [such employee] has opposed any practice made an unlawful practice by this subchapter." 42 U.S.C. § 2000e–3(a).

"Retaliation claims under Title VII are tested under a three-step burden shifting analysis. First, the plaintiff must make out a *prima facie* case of retaliation. Second, the defendant then has the burden of articulating a legitimate, non-retaliatory reason for the complained of action. Third, if the defendant meets its burden, plaintiff must adduce evidence sufficient to raise a fact issue as to whether [the employer]'s reason was merely a pretext for retaliation."

*Quinn,* 159 F.3d at 768–769 (numerous citations and internal quotation marks omitted).

In order for plaintiff to make out a *prima facie* case of retaliation, she must demonstrate: that she participated in a protected activity; that the adverse employment action disadvantaged her; and that there is a causal connection between the protected activity and the adverse employment action. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

In her CHRO complaint of November 12, 1997, plaintiff claims that she was retaliated against on or about October 21, 1997. At her deposition, plaintiff testified that she did not recall the reason why she specified this date. (Pl.'s Dep. at 258). Plaintiff testified that supervisor, Marie Whalen, tried to make plaintiff quit since September 1997, when plaintiff signed a petition about discriminatory conditions at the Health Center. (*Id.* at 235 & 228). Plaintiff stated that she received a "fair" rating on a personal evaluation dated March 31, 1998, from Whalen, who harassed her on the basis of plaintiff's Puerto Rican heritage. (*Id.* at 232–233). Plaintiff testified that she did not have evidence that Whalen gave the bad evaluation because plaintiff was Puerto Rican. (*Id.* at 229). Plaintiff also testified that Whalen ignored plaintiff's queries regarding problems with Dr. Leonard, a doctor in plaintiff's department, asked for a medical certificate when plaintiff called in sick and then transferred her to an isolated department. (*Id.* at 238–240). Plaintiff later clarified that she chose the transfer after she filed a grievance regarding the 1998 evaluation. (*Id.* at 240). Plaintiff also confirmed that after the transfer, she retained the same job title of "clerk," and received the same pay rate. (*Id.* at 264–265).

The court concludes that plaintiff has failed to demonstrate that her voluntary transfer to the ENT Clinic at the

same pay scale with the same job title was an adverse employment action and that plaintiff's voluntary transfer was in retaliation for plaintiff's filing of a grievance after Whalen gave her a "fair" performance rating. For a discrimination claim to be actionable, plaintiff must sustain a "materially adverse change in the terms and conditions of employment." *Galabya v. New York City City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000)(internal quotation marks omitted). There must be a material loss of benefits or change in responsibilities to constitute a setback in plaintiff's career. *Id.* at 641–42. Therefore, the court grants defendants' motion for summary judgment as to plaintiff's retaliation claims in Count One.

### 3. Hostile Work Environment

In order to prevail on the hostile work environment claim under Title VII as set forth in Count Seven, plaintiff must establish two elements: (1) a hostile work environment; and (2) that a specific basis exists for imputing the conduct that created the hostile work environment to the employer. *See Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir.1998), and *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997).

To establish the first element—the existence of a hostile work environment plaintiff must prove that the workplace was permeated with "discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)(internal citations and quotation marks omitted). The hostile environment must be one that a reasonable person would find hostile or abusive, and that the victim did, in fact, perceive to be so. *Id.* at 21–22, 114 S.Ct. 367. The Su-

preme Court in *Harris* held that the courts should look to the totality of the circumstances, including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance." *Id.* at 23, 114 S.Ct. 367. The incidents "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 n. 1, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)(internal citation and quotation marks omitted). "[O]ne of the critical inquiries in a hostile environment claim must be the *environment*. Evidence of a general work atmosphere . . .—as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997) (internal quotations and emphasis omitted). The Supreme Court has repeatedly emphasized that simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

Second, "plaintiff must show that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Perry v. Ethan Allen*, 115 F.3d at 149; *Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 249 (2d Cir.1995).

In establishing the elements of these tests, the court refers to the undisputed facts of both parties. During her deposition, plaintiff stated that she observed the following comments made at the Health Center: two comments by a co-worker in

1986 that Delrio "smelled like" and "dressed like" a Puerto Rican; two 1986 comments made by a doctor in plaintiff's presence, not directed at her, to the effect that "fucking Puerto Ricans come to this country and can't speak English;" a one-time comment by a co-worker in 1997, who stated that she was glad that Delrio and a Health Center doctor had resolved a problem because "for a moment I wasn't sure if the Puerto Rican [Delrio] or the Irish [doctor] were ahead;" and statements made in Delrio's presence between 1988 through 1995 referring to a Health Center patient as "this low life, piece of shit, scum sucking dog, welfare recipient."

Plaintiff testified that from the commencement of her employment at the Health Center in 1986 through 1995, she had two supervisors—Margaret Hennessey and Patricia Aglio. All of the comments above are alleged to have occurred during the 1986–1995 time period. The one alleged comment that did not occur during this time was the 1997 statement by a co-worker that "for a moment I wasn't sure if the Puerto Rican [Delrio] or the Irish [doctor] were ahead."

At her deposition, plaintiff stated that she never complained to Hennessey regarding alleged workplace harassment. Plaintiff also testified that she complained to Aglio regarding "departmental problems and issues, patient related and unrelated," but not about incidents of harassment, although plaintiff understood that she could do so.

The court concludes that these sporadic comments, some made over a span of eleven years and some not directed to plaintiff directly, are not sufficiently severe or pervasive to support a claim of a hostile work environment. Nor did plaintiff alert her supervisors of these incidents. Accordingly, the court grants defendants' motion for summary judgment as to Count Seven.

### D. Claims against Dr. Cutler

Count Three and Count Four assert claims against Dr. Cutler in his individual capacity as the former Chancellor of the Health Center. Defendants move for summary judgment on these claims because they contend that Dr. Cutler was not personally involved in any alleged act of discrimination and that because plaintiff was not denied any procedural or substantive due process clause rights as alleged. (Defs.' Reply Mem. at 23). Defendants also claim that Dr. Cutler acted in an objectively reasonable manner with respect to plaintiff's employment at the Health Center and that therefore he is entitled to qualified immunity.

#### 1. Section 1983 Claim

Courts in this Circuit hold that personal involvement of a defendant in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). Plaintiff testified that Dr. Cutler never supervised her and did not have any responsibility for deciding what positions plaintiff would have or would not have. (Pl.'s Dep. at 118). Furthermore, plaintiff stated that Dr. Cutler did not personally harass plaintiff because she was Hispanic or Puerto Rican. (*Id.*). Plaintiff testified Dr. Cutler was named as an individual defendant because he was in a position of authority at the Health Center. (*Id.* at 119). The fact that Dr. Cutler was in a high position of authority is an insufficient basis for the imposition of personal liability. *McKinnon*, 568 F.2d at 934.

#### 2. Section 1981 Claim

In plaintiff's opposition memorandum, she claims that Dr. Cutler had one meeting with the People With Voices

Committee and that he attended a 1998 meeting before the CHRO and "lied to the Commissioners about who the petitioners were", and that these incidents evidence of his personal involvement and are thus bases for imposing liability. (Pl.'s Mem. at 41–42).

> Due process claims may take either of two forms: procedural due process or substantive due process. Procedural due process claims concern the adequacy of the procedure provided by the governmental body for the protection of liberty or property rights of an individual. Substantive due process claims, on the other hand, concern limits on governmental conduct toward an individual regardless of procedural protections.

*DeLeon v. Little*, 981 F.Supp. 728, 734 (D.Conn.1997).

As to procedural due process, "[a] plaintiff claiming due process protection under the Fourteenth Amendment must possess a 'property' or 'liberty' interest that is somehow jeopardized by governmental action, necessitating a pre- or postdeprivation hearing as a safeguard." *Dobosz v. Walsh*, 892 F.2d 1135, 1140 (2d Cir.1989). Government acts defaming a person may implicate a liberty interest and may be actionable upon evidence of serious harm, such as a loss of employment. *Id.*

As noted above, it is undisputed that the plaintiff never suffered a loss of wages or benefits, demotion, suspension, or termination as a result of any comment made by Dr. Cutler to the CHRO. (Pl.'s Dep. at 265). Plaintiff has not presented sufficient evidence to create a genuine issue of material fact that the alleged actions taken by Dr. Cutler deprived her of a constitutionally protected property interest. Thus, the court grants the defendants' motion for summary judgment as to plaintiff's procedural due process claim.

As to substantive due process, "[t]he Supreme Court has enunciated two alternative tests by which substantive due process is examined. Under the first test, the plaintiff must prove that the governmental body's conduct 'shocks the conscience.'" *DeLeon*, 981 F.Supp. at 734. "[W]ith regard to [the] 'shocks the conscience' test that [t]he acts must do more than offend some fastidious squeamishness or private sentimentalism …; they must be such as to offend even hardened sensibilities, or constitute force that is brutal and offensive to human dignity." (Internal quotation marks omitted.) *Id.*, at 734–35. "[M]alicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience." *Russo v. Hartford*, 184 F.Supp.2d 169, 196 (D.Conn. 2002).

Here, plaintiff has not presented any evidence to show that defendants engaged in any conduct, that, as a matter of law, "shocks the conscience." *See Catanzaro v. Weiden*, 188 F.3d 56, 64 (2d Cir.1999)(plaintiff "must show that the government action was arbitrary, conscience-shocking, or oppressive in a constitutional sense, and not merely incorrect or ill-advised").

"Under the second test, the plaintiff must demonstrate a violation of an identified liberty or property interest protected by the Due Process Clause." *DeLeon*, 981 F.Supp. at 734. The court has already determined that the plaintiff has failed to create a genuine issue of material fact as to the existence of a constitutionally protected property or liberty interest and that she was the subject of conduct that "shocks the conscience." Thus, the court concludes that plaintiff's claims against Dr. Cutler fail as a matter of law. Therefore, the court need not reach defendants' argument that Dr. Cutler enjoys qualified immunity from suit. Accordingly, the court

grants the defendants' motion for summary judgment as to Count Three and Count Four.

### IV. CONCLUSION

For the reasons stated above, the court *grants* defendants' Motion for Summary Judgment (Doc. #105) on all counts in plaintiff Delrio's first amended complaint.

SO ORDERED.