Diane A. CARTER, Plaintiff,

v.

State of NEW YORK, New York State Education Department, New York State Department of Audit and Control, and New York State Department of Civil Service, Defendants.

No. 1:02–CV–0842(FJS/DRH).

United States District Court,
N.D. New York.

March 22, 2004.

Oliver & Oliver (Lewis B. Oliver, Esq., of Counsel), Albany, NY, for Plaintiff.

Office of the New York, State Attorney General (James Seaman, AAG, of Counsel), Albany, NY, for Defendants.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

### I. INTRODUCTION

On June 26, 2002, Plaintiff filed a complaint with this Court against Defendants alleging that, during her employment with Defendants, she was subjected to discrimination based on her sex and race in violation of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e *et seq.* With respect to her sex discrimination claims, Plaintiff contends that she was subjected to a hostile work environment and *quid pro quo* sexual harassment in violation of 42 U.S.C. § 2000e–2(a)(1) and unlawful retaliation based on her complaints of sexual harassment in violation of 42 U.S.C. § 2000e–3(a). With respect to her race discrimination claims, Plaintiff asserts that she was subject to disparate treatment and disparate impact race discrimination in violation of 42 U.S.C. § 2000e–2(a)(1) and unlawful retaliation based on her complaints of race discrimination in violation of 42 U.S.C. § 2000e–3(a).

Presently before the Court is Defendants' motion for summary judgment as to all claims. The Court heard oral argument in support of, and in opposition to, this motion on February 27, 2004, and reserved decision at that time. The following constitutes the Court's written decision with regard to the pending motion.

### II. BACKGROUND

Since 1985, Plaintiff, an African–American woman, has worked as an Education of Disadvantaged Program Aide ("EDPA," Salary Grade 14) at the New York State Department of Education ("DOE"). She alleges that, from May, 1995 until May, 1997, her supervisor, New York City Coordinating Group Team Leader James Gaughan, engaged in a pattern of sexual discrimination which included *quid pro quo* and hostile work environment sexual harassment. More specifically, Plaintiff alleges that Mr. Gaughan publicly demanded kisses and hugs from her, kissed her without permission, denied her travel expenses, restricted her overtime and compensatory vacation time, drafted baseless disciplinary letters and placed them in her personnel file, and conducted bad faith investigations of her work.

Plaintiff further alleges that the New York State Department of Civil Service ("DSC") denied her certain opportunities for promotion or advancement within the DOE based on her race. She alleges that she scored acceptably on certain Civil Service examinations but received no promotions. Further, she contends that various state agencies named in her complaint misrepresented to her that her position as an EDPA presented promotional opportunities, while it actually is a noncompetitive position that has no promotional possibilities.

On May 5, 1997, Plaintiff filed an administrative complaint with the New York State Division of Human Rights ("NYSDHR") alleging sexual harassment. On May 16, 1997, DOE Supervisor Shelia

Evans–Tranumn transferred Plaintiff to the Child, Family and Community Services office in Albany, New York, effective August 1997. Plaintiff filed additional EEOC complaints in August, 1997 and December, 1998.[1]

## III. DISCUSSION

### A. Summary Judgment Standard

A court should grant a motion for summary judgment only if "there is no genuine issue as to any material fact and when, based upon facts not in dispute, the moving party is entitled to judgment as a matter of law." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). In making this determination, the court must resolve all ambiguities and draw all reasonable inferences in a light most favorable to the non-moving party. *See id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam)). Although discrimination cases often involve a fact-intensive inquiry that precludes summary judgment, a court may award summary judgment where a fact finder could not infer a discriminatory motive. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir.1997); *see also Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001).

With these standards in mind, the Court will address each of Plaintiff's claims.

### B. Jurisdiction

■■■■ Title VII imposes an exhaustion requirement that allows federal courts to exercise jurisdiction over a plaintiff's Title VII claims only when the plaintiff has previously presented the claims in her EEOC complaint. *See Terry v. Ashcroft*, 336 F.3d 128, 150–51 (2d Cir.2003). However, the exhaustion requirement does not bar federal courts from taking jurisdiction over claims that are " 'sufficiently related to the allegations in the [EEOC] charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action[.]' " *Id.* at 151 (quotation omitted). To meet the "sufficiently related" requirement, a plaintiff must show that (1) the alleged wrongful conduct would fall within the scope of any EEOC investigation that would arise from the plaintiff's EEOC complaint; or (2) the alleged wrongful conduct constitutes an employer's retaliation for the plaintiff's EEOC complaint; or (3) the employer has carried out the alleged wrongful conduct in exactly the same manner alleged in the EEOC complaint. *See id.* (quoting *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402–03 (2d Cir.1993) (superceded on other grounds)) (other citation omitted).

---

1. In summary, Plaintiff's EEOC complaints consist of the following:
 1) May 5, 1997: Plaintiff files a complaint alleging that Mr. Gaughan sexually harassed her based on her sex and race. *See* Ex. D–4 to Defendants' Memorandum of Law.
 2) August 6, 1997: Plaintiff files a complaint alleging that Rosewita Apkarian, a DOE Personnel Office employee, retaliated against her by requiring that Plaintiff prove her attendance at a conference at a Bronx public school or forfeit her overtime pay for the day. She also alleged

that DOE retaliated against her by transferring her to a different department. *See* Ex. D–5 to Defendants' Memorandum of Law.
 3) December 30, 1998: Plaintiff files a third complaint, which amends her first complaint and re-alleges that Mr. Gaughan sexually harassed her and alleges anew that the DCS and DOE acted in tandem to deny her several promotions on the basis of her sex and race. *See* Ex. D–6 to Defendants' Memorandum of Law.

■ Defendants maintain that this Court has no jurisdiction over several of Plaintiff's allegations because her EEOC complaints lacked any factual specificity. To wit, Plaintiff alleges that Mr. Gaughan discriminated against her by refusing to recognize her accrued compensatory time and work-related travel; by directing office staff to route Plaintiff's calls directly to him when she telephoned the office to request sick days; by repeatedly criticizing the quality of Plaintiff's work; and accusing her of abusing travel allowances. Further, Defendants contend that Plaintiff's December 1998 EEOC complaint fails to identify any specific denied promotional opportunity, and, therefore, Plaintiff cannot present any claims of promotion denials in her federal court claim.

In response, Plaintiff contends that she can meet the *Butts* exception because the NYSDHR actually investigated the majority of her claims, including "hostile work environment, race discrimination, failure to promote, 'time and travel records,' out of title work, retaliatory transfer, kissing, and comp/overtime." *See* Plaintiff's Memorandum of Law at 10.[2]

Plaintiff did claim Mr. Gaughan sexually harassed her in her May, 1997 EEOC complaint. Therefore, the EEOC would reasonably have investigated the working relationship between the two, which could have incorporated the allegations cited. Therefore, Plaintiff's allegations regarding Gaughan's attempt to discipline her are not jurisdictionally barred.

■ The basis for Plaintiff's failure-to-promote claim is that she performed work that was above-her-grade but received no promotions. Although Plaintiff identified no specific promotional opportunity, based on Plaintiff's complaint, the EEOC would reasonably have investigated any race and/or gender-based promotional denials occurring prior to Plaintiff's December, 1998 EEOC complaint. Therefore, the Court has jurisdiction over any of Plaintiff's failure-to-promote claims arising before December, 1998.

■ However, Plaintiff has also alleged a new set of discriminatory acts related to the DOE's failure to promote her, all of which occurred after December, 1998. For example, Plaintiff contends that in January, 2001, DOE denied her a promotion to Nutrition Program Representative and in April–May, 2002, DCS disapproved Plaintiff's application to take certain civil service exams. Plaintiff never brought any of these claims before the EEOC at any point and has acknowledged that the NYSDHR investigation concluded before some of the events even occurred. The Court therefore grants summary judgment to Defendants with respect to any of Plaintiff's failure-to-promote claims arising after December, 1998, the date of her final EEOC complaint.

## C. Sexual Harassment Claims

### 1. Timeliness of Plaintiff's claims

■ Under Title VII, a charge "shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred . . . ." 42 U.S.C. § 2000e–5(e)(1);

---

**2.** As Defendants point out, Plaintiff pleaded her EEOC complaints extremely broadly. The NYSDHR's two written determinations, which Defendants have submitted, reflect that the NYSDHR investigated a myriad of potential claims arising from Plaintiff's charges. *See* November 27, 2001 NYSDHR Determinations and Orders. However, the allegations Plaintiff pleads in her federal court complaint do meet the "sufficiently related" requirement, although it appears from the submissions that the EEOC did not perform an investigation before issuing a right-to-sue letter.

*see also Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 394, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). With respect to hostile work environment sexual harassment claims, the Supreme Court has held that where a single act contributing to the hostile environment occurs within 300 days of the filing of the charge, a court may then consider all acts which contributed to the hostile environment, even where some of the acts occurred more than 300 days before the filing of the charge. *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115–17, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *see also Elmenayer v. ABF Freight Sys., Inc.,* 318 F.3d 130, 134 (2d Cir.2003) (quotation omitted).

Plaintiff filed her EEOC complaint on May 5, 1997. Defendants request that the Court dismiss the specific discrete claims of Plaintiff that occurred prior to this 300–day period, i.e., that Mr. Gaughan asked for a kiss in May, 1995, and her claim that he re-routed her incoming calls to himself sometime between January and April, 1997.

■ Insofar as these allegations are part of a hostile work environment claim, under the *National R.R.* standard, they are timely. However, insofar as these allegations form the basis for a *quid pro quo* claim, which constitutes a discrete act, they are not timely, and the Court therefore will not consider them. *See Gonzalez v. Bratton,* Nos. 96 CIV. 6330, 97 CIV. 2264, 2000 WL 1191558, *9 (S.D.N.Y. Aug. 22, 2000) (citation omitted).

### 2. Hostile work environment sexual harassment claim

#### a. Hostile work environment

■ To establish a *prima facie* case of hostile work environment sexual harassment under either Title VII or New York Human Rights Law based upon the conduct of her co-workers, a plaintiff must demonstrate "(1) harassment that was sufficiently severe or pervasive to alter the conditions of her employment, creating an abusive working environment, and (2) a sufficient basis for imputing the conduct that created the hostile environment to her employer." *Ferris v. Delta Air Lines, Inc.,* 277 F.3d 128, 136 (2d Cir.2001) (citing *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997)).

■ As stated, the plaintiff must first establish that the evidence will show that the conduct complained of is " " 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.' " " *Rivera v. Prudential Ins. Co. of Am.,* Nos. 95–CV–0829, 95–CV–0830, 1996 WL 637555, *8 (N.D.N.Y. Oct. 21, 1996) (quoting *Kotcher v. Rosa and Sullivan Appliance Center, Inc.,* 957 F.2d 59, 63 (2d Cir.1992)). To do so, a plaintiff must demonstrate harassment that consists of " 'more than isolated incidents or casual comments that express harassment or hostility.' " *Id.* (quoting *Babcock v. Frank,* 783 F.Supp. 800, 808 (S.D.N.Y.1992)). " '[T]he incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief.' " *Id.* (quoting *Kotcher,* 957 F.2d at 63 (citing *Carrero v. New York City Housing Authority,* 890 F.2d 569, 577 (2d Cir. 1989))).

As Plaintiff is an African–American woman, she is a member of a protected class and has therefore met the first element of her *prima facie* case. Plaintiff points out that she has also shown that she was subject to a hostile work environment, as Defendants have acknowledged that Mr. Gaughan attempted to kiss her on the cheek on at least three separate occasions. She testified that she felt humiliated at the time. Moreover, Plaintiff contends that Mr. Gaughan subjected her to pervasive

adverse employment actions including negative evaluations, restrictions on work-related travel and union activity, and an intra-departmental transfer against her will.

Defendants contend that Plaintiff is unable to show any objective or subjective harassment because three alleged kisses on the cheek in a two-year period are not severe and pervasive. According to Defendants, Plaintiff and Mr. Gaughan were almost never alone together, and Mr. Gaughan never attempted to seduce Plaintiff or subject her to any other physical contact whatsoever. Defendants further point out that Plaintiff did not respond to Mr. Gaughan as though she was offended; she acknowledged that she answered "Hi" when he greeted her with a kiss.

The Court doubts that three kisses on the cheek in a two-year period, which Plaintiff has acknowledged served as greetings, could constitute the "severe or pervasive" harassment that gives rise to a cause of action under Title VII. Moreover, as Defendants point out, Plaintiff has not come forward with any evidence at all that gender animus motivated Mr. Gaughan's actions. However, the Second Circuit has held that a plaintiff's burden to establish a material issue of fact with respect to a "hostile workplace" claim is not great. *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 439 (2d Cir.1999) (citation omitted). Therefore, the Court will assume, without deciding, that Plaintiff has raised a fact issue with respect to whether the three attempted kisses can constitute a hostile workplace.

**b. Imputation of conduct to employer**

 Under *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), an employer is presumed liable for the sexual harassment of an employee by a supervisor with immediate or successively higher authority over her. *See Faragher*, 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257. However, in a hostile work environment claim that does not culminate in a tangible employment action, the employer may escape liability by demonstrating "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275. For purposes of this analysis, "a tangible employment action occurs where a supervisor acts with the employer's authority and makes a decision that 'inflicts direct economic harm' on the employee and 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Wilburn v. Fleet Fin. Group, Inc.*, 170 F.Supp.2d 219, 227 (D.Conn.2001) (quoting *Ellerth*, 524 U.S. at 761, 762, 118 S.Ct. 2257, 141 L.Ed.2d 633).

 To determine whether an employer has used reasonable care under the first prong of the *Faragher/Ellerth* defense, courts will examine the extent to which an employer has created and disseminated a sexual harassment policy that includes a mechanism for reporting harassment. *See Wilburn*, 170 F.Supp.2d at 229. Courts will also examine the extent to which the employer has enforced its policy. *See id.* To prove that an employee failed to take advantage of corrective opportunities, the employer must meet

the "initial burden of demonstrating that an employee has completely failed to avail herself of the complaint procedure[.]" *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 246 (2d Cir.2001).

Defendants are correct that, even if Plaintiff could show that the three attempts to kiss her on the cheek, without any other touching, innuendo, or comment, constituted sexual harassment, she cannot meet the imputation prong of her *prima facie* case.[3] With respect to the prong of the *Faragher/Ellerth* defense which requires that a defendant show that it acted with reasonable care, Plaintiff acknowledges that, during the entire period when Mr. Gaughan allegedly harassed her, the DOE had published an anti-harassment policy with a complaint mechanism. Plaintiff admits that she never took advantage of the policy by complaining to any of Mr. Gaughan's supervisors or to the designated Affirmative Action Officer.

With respect to the second prong of the defense, Plaintiff has not alleged that Defendants or Mr. Gaughan perpetrated any tangible employment action against her.[4] In response to Plaintiff's claim that Mr. Gaughan barraged her with disciplinary memoranda, Defendants contend that the memoranda were neither threatening nor disciplinary in nature and further point out that Plaintiff acknowledged that she suffered no disciplinary proceedings or loss of benefits because of the memoranda. Finally, even if a lateral transfer with no loss of benefits, privileges, or rank could constitute a tangible employment action, Plaintiff acknowledges that it was Ms. Evans–Tranumn, not Mr. Gaughan, who transferred her between two DOE departments. Accordingly, the Court grants summary judgment to Defendants with respect to Plaintiff's hostile work environment sexual discrimination claim.

### 3. Quid pro quo sexual harassment

■ To establish a *quid pro quo* sexual harassment claim, a plaintiff must show that she experienced "explicit discriminatory alterations in the terms or conditions of [her] employment" because of her refusal to submit to a supervisor's explicit sexual demands. *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 91 (2d Cir.2002).

Plaintiff's *quid pro quo* claim centers on the fact that the adverse employment actions that she enumerated occurred after she rejected Mr. Gaughan's kisses. She asserts that, under *Karibian v. Columbia University*, she does not need to present evidence of actual economic loss in order to state a valid *quid pro quo* claim. *See Karibian v. Columbia Univ.*, 14 F.3d 773, 778 (2d Cir.1994).

Defendants contend that Plaintiff has acknowledged that Mr. Gaughan never explicitly or implicitly promised any benefit or threatened any harm in exchange for Plaintiff's acquiescence in his kisses; as a result, Plaintiff cannot show any nexus between Mr. Gaughan's attempts to kiss

---

**3.** Defendants have asserted that, since Mr. Gaughan had no power to hire or fire, he was not a supervisor. Plaintiff contends that Mr. Gaughan was a supervisor because he approved her travel, monitored her overtime, and tracked her absences. Plaintiff has not shown that Mr. Gaughan had the power to do anything but track travel, overtime and absences and recommend investigation by other DOE departments, such as the Personnel Department. However, because the Court must view all facts in the light most favorable to Plaintiff, the Court will assume *arguendo* that Plaintiff has shown that Mr. Gaughan was a supervisor.

**4.** Although Plaintiff has asserted a failure-to-promote claim, she only asserted such a claim in the context of her racial discrimination claim. Furthermore, her failure-to-promote claim arose well before Mr. Gaughan's alleged harassment began.

her and any of her claimed retaliatory acts. Moreover, Defendants have proffered legitimate reasons for the allegedly retaliatory acts. With regard to Plaintiff's claim that she was denied travel and overtime, Defendants point out that Plaintiff admitted that Mr. Gaughan disapproved neither travel nor overtime but instead suggested that Plaintiff adjust her travel schedule to avoid incurring overtime while traveling. Moreover, since Mr. Gaughan's superiors had implemented a nondiscriminatory policy against overtime, his restrictions on Plaintiff's time were legitimate and unrelated to the kissing or any other harassing incident.

Defendants are correct that Plaintiff has failed to point to any facts that would support a causal connection between Mr. Gaughan's alleged demands for kisses and his alleged campaign of discipline and restrictions. She does not claim that Mr. Gaughan threatened her implicitly or explicitly or that he conditioned any benefit on her acquiescence to the alleged demands that she kiss him. She apparently relies solely on temporal proximity to attempt to establish a link between his alleged requests for kisses and the discipline and restrictions.[5] However, Plaintiff claims that the last rebuffed attempted kiss from Mr. Gaughan occurred in January, 1997. Mr. Gaughan did not begin questioning Plaintiff's overtime or travel expenses until April, 1997, four months later; the Court therefore grants summary judgment to Defendants as to Plaintiff's *quid pro quo* claim.

### 4. *Retaliation claim*

 To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that (1) she engaged in a protected activity; (2) her employer was aware of that activity; (3) her employer took adverse action against her; and (4) a causal connection exists between the protected activity and the adverse action. *See Raniola v. Bratton*, 243 F.3d 610, 624 (2d Cir.2001) (quotation omitted); *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir.1997) (citations omitted). For purposes of a retaliation claim:

> an "adverse employment action" constitutes a "materially adverse change" in the employee's working conditions, . . . , such as termination, demotion, or a reduction in wages or benefits. . . . "[L]ess flagrant reprisals by employers may [also] be adverse." . . . Because there are no bright-line rules as to which employment actions meet the threshold for "adverse," courts must make this determination on a case-by-case basis.

*Wilburn*, 170 F.Supp.2d at 236–37 (internal quotations and citations omitted).

Once a plaintiff has established her *prima facie* case of retaliation by a preponderance of the evidence, the burden shifts to her employer to articulate a legitimate, non-discriminatory reason for the employment decision. *See, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The burden then shifts back to the

---

**5.** The issue of temporal proximity almost never arises in the context of a *quid pro quo* claim. Nevertheless, in the context of retaliation claims, courts have repeatedly held that plaintiffs relying solely on temporal proximity to show causation must demonstrate a very close connection, typically on the order of days or weeks, not months, between the pro-

tected activity and the alleged retaliation. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (citations omitted). As a result, Plaintiff's assertion that Mr. Gaughan retaliated against her four months after she refused him would not meet this standard.

plaintiff who must then show that the employer's proffered reason is merely a pretext and that the real reasons for its actions were discriminatory. *See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817.

■ As stated, Plaintiff contends that she first engaged in protected activity in January, 1997, when she told Mr. Gaughan that she thought his attempts to kiss her were unprofessional. Plaintiff then claims that Defendants retaliated against her in the following manner: Mr. Gaughan sent her multiple memoranda asking her to explain her travel expenses, daily schedule, and claimed overtime; a DOE employee, Rosewita Apkarian, asked her to document some of her travel expenses; and Ms. Evans–Tranumn transferred her to another department within DOE.

Notwithstanding the above, Defendants are correct in their assertions that Plaintiff has not shown any materially adverse change in her working conditions. Plaintiff admitted that the transfer changed no aspect of her job except to allow her to work for a different supervisor and that Ms. Evans–Tranumn likely was not aware that Plaintiff had filed any sexual harassment complaint. Moreover, Plaintiff acknowledged that neither Mr. Gaughan's memoranda nor Ms. Apkarian's investigation resulted in any discipline, loss of rank, loss of salary, permanent change in her personnel record, or loss of benefits.[6]

Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's retaliation claims.

**D. Race Discrimination Claims**

*1. Timeliness of Plaintiff's claims*

■ Plaintiff alleged the following acts of racial discrimination in her complaint and Statement of Material Facts:

1) 1985: Plaintiff accepted a position as an EDPA; the DOE did not disclose to her that the position was noncompetitive. DOE has not approached Plaintiff regarding any opportunities for promotion or advancement.

2) 1987: Plaintiff did not receive an unspecified promotion.

3) 1990: A DCS Director of Personnel, Charles Byrne, informed Plaintiff that DCS does not hire from a civil service exam that she allegedly took, and an undisclosed supervisor told Plaintiff that she was not entitled to a provisional appointment to a new DOE unit.

4) 1991: Steve Earl, an Affirmative Action Officer, told Plaintiff that he could not facilitate a reassignment for her.

5) 1993, 1994, 1996: DCS did not permit Plaintiff to sit for certain civil service exams because she did not meet the requisite qualifications.

6) 1996—present: Plaintiff has not received any job performance evaluations.

Defendants maintain that all Plaintiff's claims relating to the EDPA title or civil

---

**6.** Plaintiff alleges that Mr. Gaughan first retaliated against her in April, 1997 by drafting memoranda which requested that she account for her absences and overtime. However, she had not engaged in protected activity prior to that date. Plaintiff's only allegation of protected activity prior to her May, 1997 EEOC complaint was a single informal meeting with Mr. Gaughan in January, 1997. Plaintiff alleges that this informal meeting prompted Mr.

Gaughan to retaliate against her in January, 1997, by instructing his secretary to transfer Plaintiff's phone calls to him when she called into the office, as he wished to speak to Plaintiff directly about her schedule. Such a minor inconvenience does not rise to the level of a material change in working conditions. Even if it did, Plaintiff admitted in her testimony that she generally hung up before speaking to Mr. Gaughan, anyway.

service exams arose prior to the 300–day cut-off date of March 3, 1998, and are therefore time-barred. Since all of these claims are alleged as separate discrete acts of discrimination, the Court agrees that such claims are time-barred.

■ Although Plaintiff does not dispute that each of her claims arose well before the 300–day look-back period, she argues that, even if the Court determines that some claims are time-barred, the Court should toll the 300–day look-back period for equitable reasons. Plaintiff does not offer any reasons for her delay in filing a claim, while she argues that the Court should consider her untimely claims by applying the continuing violation exception.[7] However, Plaintiff did not assert the continuing violation exception in her EEOC charge or complaint, and, in any event, failures to promote do not form the basis for a continuing violation claim. *See Delrio v. Univ. of Conn. Health Care*, 292 F.Supp.2d 412, 420 (D.Conn.2003) (collecting cases). Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's race discrimination claims.

### 2. *Retaliation*

Plaintiff first engaged in protected activity in May, 1997, when she filed her first EEOC complaint, which alleged racial and sexual discrimination. Plaintiff did not allege any independent facts to support her claim of race-based retaliation. However, even if the Court were to consider the factual allegations that support her claim of gender-based retaliation as support for her claim of race-based retaliation, her claim would fail for the reasons stated above. Accordingly, the Court grants summary judgment to Defendants with respect to any remaining claims of race-based retaliation.

### IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions and oral arguments, and the applicable law, and for the reasons stated herein as well as at oral argument on February 27, 2004, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** in its entirety; and the Court further

7. Plaintiff contends that Defendants have misconstrued her claim and that it is not solely based on failure to promote. However, aside from an assertion in the complaint that Plaintiff's claim is in the nature of both failure-to-promote and disparate impact, she has offered no evidence to support a disparate impact or pattern-or-practice claim. The essence of Plaintiff's disparate impact claim appears to be that the New York State Department of Civil Service ("DCS") intentionally "funneled" African–American candidates like her into non-competitive civil service positions such as the EDPA position in order to prevent such candidates from advancing and securing better positions in state government. Defendants have countered her claim with evidence showing that DCS intentionally created positions such as the EDPA in order to help minorities advance into state service without the impediment of competitive exams. In her submissions, Plaintiff acknowledges that she understood that Defendant DCS created the positions expressly to promote the hiring and retention of under-represented minority groups into professional-level state jobs.

Defendants also provided evidence that minority holders of the EDPA title advanced into other promotional titles in direct proportion to their representation in the title. Furthermore, all individuals holding such positions are eligible to progress through the state open civil service exam process and receive promotions, depending upon their exam performance and whether or not they have a master's degree. Plaintiff failed to rebut any of this evidence with statistical evidence of her own. As a result, to the extent that Plaintiff attempts to characterize her claim as a pattern-or-practice/disparate impact claim, she has not provided any evidence to support such a claim.

ORDERS that the Clerk of the Court enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**